CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

APR 15 2005

JOHN F. CORCORAN, CLERK
BY: HMcDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

KIMBERLY MOSER,  )
               Plaintiff,  ) Case No. 4:04cv00092
                 )
v.  ) **MEMORANDUM OPINION**
                 )
DOMINION AUTO CENTER et al.,  )
                 ) By: Jackson L. Kiser
             Defendants.  ) Senior United States District Judge

Before me is plaintiff Kimberly Moser's ("Plaintiff") Motion for Default Judgment [7] against defendants Dominion Auto Center ("Dominion") and Randy Gammon ("Gammon"). Plaintiff filed a Complaint on December 17, 2004. The Defendants have not pled or otherwise defended themselves in any way. For the reasons below, I hereby **GRANT** Plaintiff's Motion for Default Judgment.

**I. STATEMENT OF FACTS**

Dominion purchased a 1999 Volkswagen Jetta ("Car") on November 7, 2002 from Mannheim Auto Auction. At that time, the Car had been wrecked, body parts had been replaced, and the body had been repainted. Sometime before February 7, 2003, a customer test-drove the Car and informed Gammon that it was malfunctioning. Dominion took the Car to Bill Black Automotive ("BBA") for repairs. BBA determined that the transmission was malfunctioning, the keyless remote was inoperative, the steering wheel was off center, and the Car needed spark plugs and a mass inflow sensor. BBA repaired the transmission under warranty, but Dominion did not allow BBA to repair the other defective items.

1

On March 11, 2003, Plaintiff began negotiations to purchase the Car. At that time, she asked Gammon about the history of the Car, and Gammon disclosed that the transmission had been recently repaired. Plaintiff then asked Gammon if anything else was wrong with the Car, and he replied that nothing else was wrong with it. Plaintiff further asked whether the Car had ever been wrecked, and Gammon informed her that he had hit a curb and caused a slight dent but that the Car had not been involved in any other wreck. When Plaintiff pointed out that the keyless entry did not work and that the steering wheel was off center, Gammon responded that the remote key just needed batteries and realignment would fix the steering. On April 1, 2003, Plaintiff agreed to purchase the Car for $10,600, but after financing fell through the parties renegotiated the price of the Car to be $9,300, with financing from First State Bank.

Shortly thereafter, Plaintiff noticed several defects in the Car. The remote entry would not work. The headlight warning light, check engine light, and the door ajar lights malfunctioned. A noise emanated from the front end. The Car shifted hard. The air conditioning was not working properly. When Plaintiff began having problems with the engine, she contacted Dominion to inquire where the transmission had been fixed so she could take the Car to the same mechanic. Donna Williams, a Dominion employee, then gave Plaintiff a copy of the invoice from BBA for the Car. After reading the invoice, Plaintiff learned that the Car had many more problems of which she had not been informed.

Plaintiff next made an appointment with BBA to examine the Car. BBA informed her that the previous problems still existed and that the Car needed repairs totaling $900 in parts alone. Plaintiff declined to approve the repairs and notified Gammon who told her that nothing was wrong with the Car. In subsequent confrontations between Gammon and Plaintiff, Gammon

2

continued to deny that anything was wrong with the Car and asserted that BBA was fraudulently diagnosing problems that didn't exist.

Plaintiff then had the Car examined by another mechanic. The inspection revealed that the air conditioning was "fried," the main engine cooling fan was near failure, the left front was "klunking," and the electrical system was malfunctioning. The mechanic informed her that the Car had been wrecked and opined that the electrical problems may have stemmed from that. On May 13, 2003, Plaintiff delivered a notice to Defendants that she was revoking her acceptance of the Car and demanded her money back.

## II. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Plaintiff has petitioned this Court for default judgment against the Defendants. Under the Federal Rules, a plaintiff is entitled to default judgment when the defendant fails to plead or otherwise defend. Fed. R. Civ. P. 55(a). In determining liability for a default, the "appropriate inquiry is whether or not the face of the pleadings supports the default judgment and the causes of action therein." *Anderson v. Foundation for Advancement*, 187 F.3d 628, *1 (4th Cir. 1999) (*citing Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1408, 1418 (5th Cir. 1975)).

### A. Federal Odometer Act

Plaintiff has alleged that Defendants violated the Federal Odometer Act. Under the Odometer Act, a person transferring ownership of a vehicle may not make a false statement to a transferee regarding the mileage of the car. 49 U.S.C. § 32705. A party who violates the Odometer Act is liable for three times the actual damages or $1,500, whichever is greater. 49 U.S.C. § 32710.

3

Defendants violated the Odometer Act by misrepresenting the mileage of the Car. On November 19, 2002, Dominion had the Car inspected at Perry Brothers Tire which listed the mileage as 47,005. On February 7, 2003, Dominion drove the Car to BBA in Greensboro, and BBA indicated that the mileage of the Car was 47,128. In March 2003, Gammon filled out a Buyer's Order for Plaintiff which listed the mileage as 47,005, 123 miles less than the reading taken a month earlier. The face of the pleadings therefore indicates some discrepancy between what appears to be the Car's actual mileage in March 2003 and the mileage as represented by Defendants to Plaintiff in March 2003. Without a response from the Defendants, I must accept the Plaintiff's argument that the Defendants intended to defraud Plaintiff by misrepresenting the actual mileage of the car. Because the mileage was minimal, however, there are no actual damages. Therefore, the Defendants are liable for $1,500, the amount of the statutory damages.

### *B. Fraud*

Plaintiff has also stated three state law claims of fraud. In order to recover for actual fraud in Virginia, a plaintiff must prove that the defendant intentionally made a material misrepresentation of fact upon which the plaintiff relied and that damage resulted from the misrepresentation. *Klaiber v. Freemason Associates, Inc.*, 266 Va. 478, 484 (2003). A principal is held liable for fraud committed by its agent under the doctrine of respondeat superior. *Jefferson Standard Life Ins. Co. v. Hedrick*, 181 Va. 824, 834-45 (1943). Here, Gammons intentionally made several material misrepresentations of fact including that the Car had been involved in no other accidents besides the one in which he hit a curb and that nothing was wrong with the Car other than the transmission. Plaintiff relied on those misrepresentations when she purchased the Car, and damage resulted. Gammon is therefore liable for actual fraud along with

4

Dominion under the doctrine of respondeat superior. Plaintiff is entitled to $10,651.44 in actual damages.[1]

I further find that Defendants are liable for punitive damages. Virginia courts have held that a defendant is liable for punitive damages for fraud if the evidence establishes that he acted with malice or with such recklessness as to evince a conscious disregard of the rights of others. *Jordan v. Suave*, 219 Va. 448, 453 (1978). Gammon not only failed to disclose the Car's numerous defects and its accident history but also lied to Plaintiff when she specifically asked about those matters. Therefore, I also award $30,000 in punitive damages to the Plaintiff.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Default Judgment is **GRANTED** in the amount of **$42,151.44**. Defendants are liable for $1,500 for violating the Federal Odometer Act, $10,651.44 in actual damages for fraud, and $30,000 in punitive damages for fraud.

The clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 15th day of April, 2005.

*Jackson L. Kiser*
Senior United States District Judge

---

[1] There is some discrepancy as to the amount of damages stated in the Plaintiff's affidavits. I have taken this figure from the affidavit submitted by Plaintiff's counsel because it is the only definitive statement concerning the total amount in actual damages she suffered and is seeking.

5